All right, our next case for this morning is United States v. Roy Collins. Mr. Mitchell. May it please the Court, good morning, Justices. My name is Gregory Mitchell and I represent Mr. Roy Collins. Your Honors, I would like to focus my time this morning essentially on the main issue I think is the lost amount. But I would like to address first the question of the acceptance of responsibility. If I can briefly explain and recount the record a little bit. Essentially, Mr. Collins was the Executive Director of the Kankakee Park District for an extremely, almost two years. But before that- Counsel, I understand you disagree with the District Court's calculation of the lost amount. And as soon as a lawyer does that, I want to go and look and see what the District Court said about why it calculated what it calculated. And of course, Circuit Rule 30 requires that to be an appendix to the brief. But I couldn't find it. In fact, none of the District Court's findings is in your brief. Where do I go to find that? Judge, I outlined from the record- I didn't ask for an outline. I asked for, and Circuit Rule 30 requires, a verbatim copy of the District Court's findings sought to be reviewed. Judge, there was not a single order with respect to what the Judge found. Well, there might be more than one. Then you have to include them all. It doesn't mean you include none of them. Yes, Your Honor, I understand. What I attempted to do is essentially outline, essentially- The rule doesn't allow you to essentially outline things. You have to provide us with verbatim copies of the District Court's reasons. Which would include transcript. I mean, if it was uttered in an oral hearing, there would be a transcript. But we were left to search. I mean, I was running- my law clerks are fishing through the entire transcript because you didn't even direct us to the portions that were relevant. Well, I cited it through my factual basis, and I apologize for not allowing and preparing it, essentially an index. But I cited in my factual each finding on the page of each transcript. You have certified that your brief includes what is required. What it in fact includes is your filings in the District Court, which are not covered by Circuit Rule 30, and it omits what is required by Circuit Rule 30, the District Court's findings. What are we supposed to do under those circumstances? In this particular case, Judge, I would just simply refer to the transcript as I cited in my brief, and the citing is what the Judge essentially indicated was his findings. So we just have to believe you. Well, it's in some ways- The point of the rule is that you have to give us the District Court's findings in the District Court's words, not what counsel chooses to excerpt from them. Understood, Your Honor. And the problem is- I mean, I guess I'll just pile on, and then we'll have to figure out what to do about this. Your Certificate of Compliance says that you included all materials required by Parts A and B of Circuit Rule 30, and then it actually goes on to say, including a copy of the oral rulings in the case. And it's hard for me to believe that you read Circuit Rule 30 before you wrote this down because I just don't see how it could be misunderstood to allow you to satisfy that obligation through summaries in the brief. I mean, what we're doing, we're reviewing what a District Court did. And so step one is to see what did the District Court do? What were the District Court's reasons? Sometimes, as in an earlier argument today, maybe the District Court is fairly cursory in its explanation. Sometimes the District Courts write 45-page opinions. You never know. Different things happen. But we need to see what the District Court did before we can move ahead with our role. And I apologize. I thought by citing from the transcript specifically what the- No. You can't have read the rule if you thought that. I don't know how you can certify that you complied with a rule if you haven't read it. Your Honor, I believe I understood the rule and I had read it. And I didn't understand that unless there was a- Rule requires you to enclose, to include the District Court's findings on all matters sought to be reviewed. Not excerpts from them. Not my take on them. I understand, Your Honor. And in the past, in my experience, there's usually a order or at least findings that I could attach that are part of the record. In this particular case, there was no- They're transcripts. So you have to do the digging. It's really-we have a lot of reading to do. And we are not-we have said in our circuit rules that this is an obligation of counsel. But we will discuss amongst ourselves what to do about this.  I apologize again. Counsel, can you address the government's argument that your appeal of the restitution order should be dismissed under Manrique? Yes, Judge. And I addressed that in my reply brief in particular. I know, but I would like you to address it now. The case that they essentially cite outlines a factual pattern where essentially the sentencing hearing was bifurcated. There were two parts. The judge essentially had a sentencing hearing and withheld the issue of restitution for a subsequent hearing. As the judge did here, right? It's precisely what the judge did here. I'm stunned that you tried-I saw you made that distinction in your reply brief. But I thought aside from perhaps the use of some synonyms or something, it's exactly the process the judge used here. The judge says, I'm not done with restitution yet. I'm going to issue a later order. He does issue a later order. It's exactly like Manrique. Well, my understanding is it's not. It wasn't that if there was going to have a hearing on restitution separate and apart, the judge actually took the evidence for the restitution hearing and had it completed. Yeah, but what difference does it make? The point of Manrique is that you have to appeal from an order after the order has been entered. You can't appeal from an order that hasn't been entered yet. There is a provision in the civil rules, though not in the criminal rules, for appealing from an order after its announcement but before its formal entry. But the terms of the judgment have to be announced but not entered for that form of springing appeal to work. But otherwise, the rule is judgment first, appeal later. It's really simple. Right. I mean, just think of it from a common sense point of view. You have to have the ruling in place before you even know whether you want to appeal from it. Suppose the restitution order after the judge held that supplemental hearing had turned out to be the $13,000 and some that you seem to concede would have been payable. Well, maybe you wouldn't have decided to appeal that. We don't know. You have to have the order first, then the appeal, even in the springing forward situations. It's just that sometimes, you know, there will be a conviction and you want to appeal certain parts of that and then the sentence comes later. I think actually they amended the rules even for the criminal side, but it doesn't matter. I mean, the point is you need to know what you're appealing from. You can't just—I mean, otherwise, you'd file a notice of appeal the day trial began and say, you know, I'll fill in the blanks later. And I understand that, and that's not what happened in this case. As you see from the record, the judge actually found the restitution amount, but he wanted—he said there was an issue of the amount that calculated towards the loss amount. The only question was is whether or not it was going to be a specific amount requested by the government or some less amount. Or some different amount. Right, exactly. And the judge needed to decide that, and after the judge decided it, you needed to appeal. But the range didn't change, Your Honor, and that was the key. And unlike in Magriff where there was no decision at all— You can't appeal from a range. You can only appeal from a judgment. And the judgment was this range. No, the judgment was not. When the judge finally entered the second order that you should have filed a notice of appeal from, the judge comes up with very specific numbers. Actually, he corrects one of them because of the golf cart later. But he comes up with $163,130.30. That's a number. It's an amount that somebody can pay. It's not, oh, somewhere between $50,000 and $150,000. It's a number. It's an obligation. It's a judgment. It's a monetary obligation to the United States. It will stay with this person until he satisfies it. It's not dischargeable in bankruptcy. I mean, it's a serious number. I understand. And, again, if the district court had scheduled a restitution hearing to decide that issue, then— What did the district court not do that by any other name was exactly that? I think essentially what he indicated is that you can have supplemental briefing on this point, and I will make my ruling. There was no supplemental hearing. And he doesn't fill in a loss amount the first time. He waits for this supplemental process just because it's briefs instead of showing up in court for an oral hearing surely can't be the difference. I think that's a significant difference, Your Honor, that if, in fact, they make a finding within a range and says, I want you to brief it so that I can essentially determine what dispute is, but this amount I'm going to find, and so he opposed the sentence based on the amount of loss he found. The sentence that was imposed was in reliance on the restitution amount that he found during the hearing. Counsel, let me ask you—let me shift away from the Manrique issue and ask you about your challenge to the sentence. So you fault the district court for not explaining the causation analysis, why it should have been foreseeable to the defendant that the Park District would suffer pecuniary loss from his actions. And we have the problem of not being directed to the portion of the transcript that matters for this purpose, but let's say that the judge, in fact, doesn't spell out on the record how the defendant's— and let's assume you lose on your relevant conduct challenge—how the defendant's actions of having the pond built on his house and ordering the boots, et cetera, et cetera, taking the ticket entry, money, all of that stuff. Let's say it's all relevant conduct. Is it really your position that it wouldn't be foreseeable to someone who stole that those actions would cause pecuniary loss? No, my position is a little bit more nuanced than that, Your Honor, and I tried to make that to the district court as well as part of the hearing. As this court pointed out, there's two parts of the causation. There's the but-for causation that had this not occurred, the loss wouldn't have occurred, and then there's the proximate cause causation. We're not arguing that if you believe that this was a theft and that the theft occurred, clearly there's proximate cause to the loss, but there's no evidence that there was a theft here. The question becomes relevant conduct, right? That's just repackaging your argument that this shouldn't have been treated as relevant conduct in terms of causation because your argument is really none of this should have been treated as relevant conduct because he didn't steal. There wasn't sufficient evidence that he did these things, the credit card calculation and the money from the ticket fees. That is correct. That was our position from the beginning, and that was part of the plea agreement, and that was part of the facts, and that was the evidence as well. And that was the whole issue with respect to the testimony that was provided because clearly our position is that the government can make their position as they did in front of the grand jury. They can make their position. It didn't seem as much, but when the court and the district court decides to adopt whatever those findings are, they look at the evidence that's presented at that time, and it's not just simply the government's recitation of their believing of the facts. Well, they have evidence, though, and it's a preponderant standard, and I have to say your argument left me with the thought that you were essentially saying the worse the records somebody keeps, the more likely they are to escape a restitution obligation because certainly Mr. Collins wasn't on an A-plus record-keeping plan. Right? I mean, it's just not that, but that's not the way it works. I mean, the government is entitled and the district court is entitled even for restitution to use estimates as long as it's an estimate of actual loss, not just intended loss, and the government explains the relation between the guidelines calculation and the restitution calculation on the basis that this happens to be an actual loss case across the board, that it didn't include intended loss for the guidelines. If you want to think about that for a minute, I'll let you save a bit for rebuttal. Essentially, Your Honor, what I argued and what I argued in my brief is that the actual loss issue first starts with the victims in terms of what is calculated. In this case, it's sort of the tail is wagging the dog. What ends up happening is that they prepare financial statements or losses and say simply because these books were missing, we're going to say that these are losses as opposed to anyone because of any sort of record of any prior period. That's what I mean. It gets down to the quality of the records, but I think you should sit down and take a minute for rebuttal. Ms. Boyle. Good morning, Your Honors. May it please the court, counsel, my name is Katherine Boyle on behalf of the United States. This case and the sentencing challenges on appeal are about the defendant, Roy Collins, theft of tens of thousands of dollars of public money and his continued refusal to accept responsibility for his crimes. First, the district court committed no procedural error in sentencing Mr. Collins. The district court did not err, clearly or otherwise, in determining the loss amount suffered by the Kankakee Valley Park District and Foundation and in applying the related offense level increase. So the government is equating, I'll take the pond liner, that he spends $3,008 on this thing. And so that's both the gain to him and the loss to the park district or the foundation, whichever. You're not really distinguishing between the district and the foundation, I take it, too much. Not extensively, Your Honor. The foundation was essentially a fundraising arm for the park district that provided scholarships for low-income children. So they had a common purpose in many respects. So you're saying that in this particular instance, the gain to him and the loss to the victims is the same. Yes, Your Honor. So in the instance of the pond liner, which was the basis of the mail fraud charge, Mr. Collins took a foundation check and wrote the check for $3,008 to the company from which he bought the pond liner, sent them the check, and then received the pond liner. And Mr. Collins later tried to suggest that he only needed to do that because the company wouldn't accept personal checks and law enforcement checked on that, and that was found to be untrue. So this is a pretty clear case of theft, direct use of money from their checking account. What about these missing ticket sales? There's a funny mathematical point here. This would be the 2015 Barbecue Fest ticket sales. So the gate clicker thinks that 9,453 people entered. Collins estimates the sales even higher than that at 9,900, but the Barbecue Fest financial summary lists 6,870, and the government estimates sort of an average price of $18 a ticket, but they use his estimate, as I see it, as the basis of this, not the clicker estimate. It comes out to a lower number. If you're using his estimate, it comes out to $54,899. If you use the clicker number, it's only $38,494. So why didn't you use the clicker number? Well, Your Honor, first, if I may take a step back, we believe Mr. Collins has waived any challenge to the $54,899 loss amount. While Mr. Collins initially raised that loss amount in an early objection, he did not raise it in his later objections, and then actually at the – so there was a two-day sentencing hearing in 2018 and then a one-day sentencing hearing in 2019. At the second sentencing hearing in 2019, when Mr. Collins went over his objections, he did not raise that objection. And at that point, government counsel noted that there were a couple of outstanding objections, asked Mr. Collins and defense counsel if they would like to raise any more. They said that they did not want to. And then actually government counsel specifically said, what about this objection as to the discrepancy between the cash collected and the tickets sold, and, again, they affirmatively said they had no further objections. So we would view that as an affirmative abandonment of that objection. So you just say that's flat waiver? Flat waiver, as opposed to a forfeiture. Yes, I would, especially where not only did the government counsel remind defense counsel and Mr. Collins of whether there were unnamed objections, government counsel actually brought up this specific objection because it involved a large amount of money. And both Mr. Collins personally and defense counsel affirmed after that statement by government counsel that they had no further objections. So we believe any challenge to that is waived on that basis. I mean, so it's relevant both to the 10-level enhancement under the guidelines ultimately, I guess cumulatively, it wouldn't be relevant to restitution if his failure to file a notice of appeal wipes that off anyway. Yes, Your Honor, that's correct. But if you'd like a little more explanation on the- Yeah, it just seemed curious to me that when you had a number that you were otherwise relying on, you were relying on the lower number of clicks, well, the higher number of clicks, so to speak. Well, I think the government tried to- So the government, well, for background, Barbecue Fest hired a company called D&J Amusements as a carnival vendor, and D&J Amusements had a contract that permitted them to be paid based upon the number of people who went through the gate. And I believe the deal was they got $3 per click per person who went through the gate for the first 7,500 people. And then after that, it was $1 per additional person who went through the gate. And D&J in 2015 ended up collecting about $24,000 based upon this system. So law enforcement looked at that number and decided that because of that, I think it was about 9,400, 9,500 people were counted as going through the fest gates. And we thought it was striking in particular when you looked at Mr. Collins' financial summary and description of the number of tickets sold. And it is true that we believe at one point he said about 9,900 tickets were sold, but when you look at the finances, he's saying it's only 6,000-something and that there was only so much cash collected as a result of that. So when law enforcement was trying to figure out exactly how much money was missing, they came up with a conservative estimate of ticket value. I believe the Thursday night tickets for Barbecue Fest, which was a three-day event, were $15, and the Friday and Saturday night tickets were $20, and then there were also VIP tickets available for $35. So they came up with this idea of $18 per ticket, tried to look at the amount of tickets Mr. Collins reported being sold and the amount of people who appeared to go through the gate per DNJ. On the theory that some people who purchased tickets didn't go? Pardon? On the theory that some people who purchased tickets didn't show up that night? Well, I think that there was about a 3,000-person difference between the number of people that Mr. Collins had stated attended the fest in his financial summary and then DNJ's estimate. And I think when law enforcement extrapolated out this 3,000 number times about $18 per cost ticket, that's where you get the $54,899. So your problem with looking at receipts is that that's precisely the question. Is this the area that was going around with tubs of cash? Yes, that's correct, Your Honor. We had testimony at the sentencing hearing reporting that Mr. Collins was transporting tubs of cash. We had testimony that his wife at one point was seen with large amounts of cash in her purse. Mr. Collins was responsible for transmitting the cash after Barbecue Fest, and we also had testimony from law enforcement agents showing that during a relevant time period, Mr. Collins was known for paying certain bills in large amounts of cash. And you included the municipal bank because they wrote off the loan? Is that right? Well, yes, Your Honor, although it's a bit more than that. We included municipal bank. We believe that the loan, which Mr. Collins directed the Park District attorney to obtain from municipal bank, was used to cover up Mr. Collins' theft in large part. Part of Mr. Collins' theft was he would either take out cash withdrawals or he would write checks to cash, and he would then either take all or part of this money, say it had been paid to certain vendors for Barbecue Fest, for instance, and then he would keep some of it himself. So as a result of this sort of theft, there were outstanding payments to vendors that appeared to have been paid but had not because Mr. Collins had stolen all or part of the payments. So this resulted, among other thefts in the Park District, operating in financial constraints, which is when Mr. Collins directed the Park District attorney to get a loan. The $25,000 proceeds that this loan provided allowed the Park District to both keep paying legitimate expenses that it would not have had the funds for in addition to actually making these vendor payments that had appeared to have been paid because Mr. Collins had attributed them to certain vendors, but they hadn't because he had taken that amount of cash. So because of that, we believe, and additionally I should say that the loan was also issued based in part upon 2016 Barbecue Fest contracts, knowing that those proceeds would be coming in, saying from like Miller, Coors Light, companies like that, and the bank had received assurances that proceeds from these contracts could be used to pay back the loan. Well, of course, instead, because there's so much money missing from the Park District, proceeds from these contracts start to be used to pay back, to cover legitimate districts and to pay for theft. And this theft of the ban money was basically just duplicate payments. They'd already been paid, and then he got the other envelopes with the 52, whatever it was, cash. Yes, Your Honor. There were five national acts for that Barbecue Fest. Can you tell me, this is irrelevant to the entire appeal, when we see a payment to the Silhouettes, are we talking about the group that was around in the 1960s or are we talking about some other group? Your Honor, I'm not 100% sure. My impression was it was a local band, but I could be wrong about that. It's possible they were based in Kentucky. They'd be really old if they were the only Silhouettes. Either that or there's a trademark issue in this case that no one has discussed. Well, I would say that's waived. Anyways, thank you, Your Honor. Are there any other specific questions as to the loss calculations? We've outlined a lot of it in our brief, but I would like to take the opportunity, if you have any questions about the defendant's particular challenges to certain loss calculations in the case, I'd like to address them here. None from me. I'm fine. I think we're good. Thank you, Your Honors. I'd also just like to note here that the court did not err, clearly or otherwise, in determining that Mr. Collins did not accept responsibility for his conduct. I think that's something that is clear really throughout the case. Not only did, right after Mr. Collins entered his plea of guilty, he attempted to withdraw it and also attempted to dismiss the indictment. We also saw through his really extensive factual objections to the pre-sentence report, which denied relevant conduct. That was another thing going against his acceptance of responsibility. Also, his elocution letter. If you look at his elocution letter, it basically reads as a list of his accomplishments for the Park District. He denies nearly all of the offense conduct, except for the kickback payments to Mr. Zimborski. He even denies the conduct that formed the basis for the wire fraud charge to which he pled guilty, which was the purchase of some country boots on the Park District docks in Nashville. He denies that he intended to defraud the district when he did that, in this elocution letter. I think the district court correctly noted, first of all, that Mr. Collins had displayed an arrogance throughout the proceedings, and second of all, that although there hadn't been a trial, it really felt almost as though there had been, by the time this contested motion to withdraw a guilty plea, by the time you had this original two-day sentencing hearing, and then, again, this wide swath of objections to the pre-sentence report. We think on that basis, there's no reason here to conclude that the district court abused its discretion in denying acceptance of responsibility. I also think that Your Honors correctly noted earlier that when you look at Manrique, this court, we would argue the court must dismiss Mr. Collins' appeal of the amended restitution order in judgment for lack of jurisdiction, and I think under Manrique, we can say, at the very least, should be dismissed because the government has invoked a mandatory claim processing rule. Why would you say jurisdiction? I mean, you know, Manrique reserves that question and says, you know, even if this is just a claims processing rule, the government raised it, and as you have here. What's the argument that it's jurisdictional? Did his brief not serve as a functional notice of appeal? Sure. Well, under 3742A, the only way for this court to gain jurisdiction, and under Federal Rule of Appellate Procedure 3, the way for this court to obtain jurisdiction is through the notice of appeal. Yes, but as my colleague said, doesn't his brief serve as a notice of appeal? Smith holds, in Smith, the Supreme Court holds, that a brief can be a notice of appeal. There has to be a notice of appeal. The problem is that it's not timely, and we've held that the time to file a notice of appeal in a criminal case is not jurisdictional. But who cares, right? If it's a mandatory rule, when it's invoked, it has to be enforced, and it's been invoked. Well, we think here it makes sense for a number of reasons to view this court as not having jurisdiction in a case like this where there is no notice of appeal from the relevant court. Could you explain who cares? What difference does it make here, in this case? I think we want to discourage defendants or... Could you explain what difference it makes in this case? What you've said a couple of times is, we would like an advisory opinion on what to do in some other case. Could you explain what difference it makes in this case? Same result either way, right? Same result either way. The government has certainly invoked the rule. I mean, no one is going to say you forfeited, waived, or in any other way threw it out the window. So we know what you're saying. We understand it. We've read Manrique. So, okay. I think that will suffice. That will suffice. Thank you very much. Thank you, Your Honor. And, Your Honor, I did just want to note, and I apologize, in the government's jurisdictional statement, we do say that the initial order of restitution was issued on January 21st. It was February 21st. I just wanted to make that correction for the record. Thank you. Thank you, Your Honors. All right. Anything further, Mr. Mitchell? Get yourself up to the podium first, please. Thank you. First, with respect to the waiver, Judge, I understand the government's position that because, in the course of the hearing, the judge asked if I wanted to address any other issues that were raised. And I answered no. And Mr. Collins wanted a reasoning behind that. There's no abandonment of any of the objections that were raised. They were raised repeatedly in writing form, and I addressed each one of them. The question was, is that the logic and the reasoning behind each objection the court addressed the same way. There's no reason to keep arguing the same thing to get the same answer over and over again, and that's where we were at the very end. And so the question becomes, is this a forfeit because I refuse to make an oral statement or simply say we're not withdrawing any of them. My understanding is that if they're in writing. Your point is that it was covered. It wasn't a new point. Yes. Okay. And the other issue, Judge, is this question about the counting that I think you raised, and I think it's an important point. The issue with the counting, with the DJ amusements, is how do you determine the number of people were there? But this is an estimate. The clicker is a way of measuring crowds. I mean, that's where I have a problem with your general approach. And so I don't know why. It's actually something that wouldn't have made any difference to the sentencing guideline calculation because of the way the ranges were, the difference between the 54 and the 38 or whatever it was, something along those lines. It would certainly make a difference in his restitution obligation if that isn't off the table altogether because of the Manrique rule. I will note in that connection that the district court's first judgment, page A5 of your appendix, on the line, restitution has dollars, and then in all capital letters, reserved. So I just don't know how that doesn't fit Manrique. Yes. Thank you. Okay. Thank you very much. We will take the case under advisement.